UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MICHAEL TRANTER, Administrator
for the Estate of Nolan Hunter,

     Plaintiff,

-v-

GREG ORICK, et al.,

     Defendants.

Case No. 3:09-cv-125

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING ORICK'S MOTION FOR SUMMARY JUDGMENT (Doc. #13) AND TERMINATING THIS CASE**

---

  This is a civil rights action accompanied by state law tort claims. (Doc. #1.) The Plaintiff is Michael Tranter ("Tranter") who is the administrator of the Estate of Nolan Hunter who is deceased. The original Defendants were Dayton Police Officer Greg Orick ("Officer Orick") the City of Dayton and unnamed John Does.

  Tranter brings three claims for relief. (Doc. #1.) His First Cause of Action is against all Defendants for violation of 42 U.S.C. § 1983. His Second Cause of Action is a state law wrongful death claim against all Defendants, and his Third Cause of Action is a state law survival action against all Defendants.

  This Court has federal question jurisdiction over Tranter's § 1983 action pursuant to 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over Tranter's state law claims pursuant to 28 U.S.C. § 1391.

  Tranter has dismissed all claims against the City of Dayton by stipulation. (Doc. #14.) Further, Tranter has identified no John Does. Therefore, Tranter's claims against Officer Orick

remain to be adjudicated.

Now before the Court is Officer Orick's Motion for Summary Judgment. (Doc. #13.) This Motion is now fully briefed and ripe for decision. The relevant facts will first be set forth followed by the relevant law and an analysis of Officer Orick's Motion. But first, recognizing that the facts that satisfy Fed. R. Civ. P. 56 must be viewed in a light most favorable to Tranter, the Court will address an issue, raised by Officer Orick, regarding the alleged facts identified by Tranter in his Memorandum In Opposition to Officer Orick's Motion for Summary Judgment. (Doc. #17.)

## RULE 56 EVIDENCE

Rule 56 only authorizes the consideration of pleadings, depositions, answers to interrogatories, admissions and affidavits when deciding motions for summary judgment. Fed. R. Civ. P. 56(c). Further, documents which are not properly authenticated and verified and are not admissible in evidence are not to be considered. *Logan v. Denny's, Inc.*, 259 F.3d 558, 570 (6th Cir. 2001)(citing *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993)). Finally, hearsay evidence cannot be considered for Rule 56 purposes. *State Mutual Life Assurance Co. of America v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979).

Officer Orick argues that the Dayton Police Department Homicide Investigation, the Statement of Chanata Hunter, the Statements of Mr. and Mrs. Terry Lynch, the Statement of Jammell Hicks, the Statement of David Demmons and the Statement of Ashley Nunery must not be considered because these materials do not satisfy the evidentiary requirements of Rule 56(c) and Rule 56(e). Tranter responds that the Dayton Police Department Homicide Investigation Report is inadmissible hearsay but the Court may consider this hearsay evidence because it will

be presented in an admissible form at trial.

In support of his argument, Tranter cites *Bertl v. City of Westland*, No. 07-2547, 2009 WL 247907 at *3 (6th Cir. Feb. 2, 2009); *Skousen v. Brighton High School*, 305 F.3d 520, 523 (6th Cir. 2002); *Sayler v. Gilbert*, No. 2:08cv516, 2010 WL 1276713 (S.D. Ohio Mar. 26, 2010); and *Michaels v. City of Vermillion*, 539 F. Supp.2d 975 (N.D. Ohio 2008).

However, none of these cases cited by Tranter stand for the proposition that a court may consider inadmissible hearsay for a motion for summary judgment because the inadmissible hearsay will be presented in an admissible form at trial. In *Bertl*, the Sixth Circuit did not reach the issue of whether the district court could consider hearsay evidence specifically stating that it could not entertain evidentiary disputes presented in an interlocutory appeal. *Bertl*, 2009 WL 247907 at *3-4. *Skousen*, *Sayler* and *Michaels* include no discussion about the consideration of hearsay evidence.

Thus, consistent with the requirements of Rule 56, the Court will not consider hearsay evidence for the purposes of this Motion for Summary Judgment on the promise that the evidence would later be presented in a proper and admissible form. Specifically, the Dayton Police Department Homicide Investigation report, the Statement of Chanata Hunter, the Statements of Mr. and Mrs. Terry Lynch, the Statement of Jammell Hicks, the Statement of David Demmons and the Statement of Ashley Nunery are all hearsay and will not be considered.

## RELEVANT FACTS

The following factual summary is based upon the Rule 56 evidence submitted by the Parties. Those material facts which are supported by deposition testimony, affidavit or other Rule 56 evidence are stated in the light most favorable to Tranter.

Officer Orick was on duty during the early morning hours of April 2, 2007, when he was dispatched to the 200 block of Basswood Avenue in Dayton, Ohio, in response to several disturbance calls reporting people fighting and shots fired. (Deposition of Gregory Orick ("Orick Dep.") 91, 96, 103-04, 112 May 11, 2010.) Four to six different calls were relayed to Officer Orick before he arrived on the scene. (Id. 107.) These calls advised Officer Orick that two black males were involved - one with "puffy" braids wearing a white tee-shirt and the other with braids wearing a number "32" jersey. (Id. 107, 115.)

A disturbance, such as this one, with shots fired is considered a two-officer call pursuant to Dayton Police Department policy. (Id. 121-22.) When Officer Orick first arrived on the scene, he was alone and knew that the second officer, Officer Sanders, had not yet arrived. (Id.) Therefore, Officer Orick parked his vehicle in the 200 block of Beechwood, adjacent and parallel to Basswood. (Id. 122.) Officer Orick parked there to try to observe what was going on while he waited for Officer Sanders. (Id.)

Officer Orick walked up a small alleyway to the front of the house at 209 Basswood. (Id. 122-23.) He stood at the front corner were he was partially concealed by shrubbery and the house. (Id. at 123-24.) Officer Orick intentionally sought out a dark area where he would not be seen but had a clear field of view looking down Basswood. (Id. 123-24.)

Initially, Officer Orick saw no one. (Id.) He then noticed a black male wearing a white tee-shirt constantly peeking out from behind the drapes of the front window of a ground-floor apartment in the building diagonally across Basswood east of his location. (Id. 124-25.) This apartment was later identified as Apartment #1 at 218 Basswood Avenue. (Id. at 124.)

Officer Orick then saw another black male wearing a red tee-shirt walking east on

-4-

Basswood Avenue. (Id. 125-26.) This individual entered 218 Basswood and was let into Apartment #1. (Id. 127.)

Officer Orick next observed a third black male running down the middle of Basswood near the intersection of Basswood and Theodore. (Id. 128.) This individual, later identified as Antonio Foreman ("Foreman"), was wearing a white jersey with the number "32" on the front. (Id. 128.) Officer Orick radioed this information to Officer Sanders who was, by then, close to the scene. (Id. 129.)

Foreman suddenly quit running and stood motionless right in the middle of Basswood facing the apartment at 218 Basswood. (Id. 130.) As Foreman stopped, the black male wearing a while tee-shirt who had been peering out from behind the drapes of the apartment window (later identified as Nolan Hunter), walked out of 218 Basswood and stood on the front stoop. (Id. 136.) The two men were staring at each other, and Nolan Hunter ("Hunter") shouted "I'm gonna smoke your ass" at Foreman. (Id. 138.) Foreman replied by throwing his hands in the air and shouting, "do what you gotta do." (Id.) Hunter then raised his right arm and fired a .25 caliber handgun into the air. (Id.)

Officer Orick did not view Hunter's warning shot as an attempt to do harm to Foreman. (Id. 142-43.) However, when Officer Orick heard the exchange and saw the shot fired, he immediately got on his radio and advised of "shots fired" and that the two men were "talking about blowing each others heads off." (Id.) Officer Orick also requested additional crews. (Id. 139, 142.)

The situation between Foreman and Hunter then quickly escalated. Foreman responded to Hunter's warning shot by walking down the middle of the street until he stood directly in front of

218 Basswood. (Id. 139.) Hunter left the front porch stoop and walked toward Foreman to the grass just off of the sidewalk. (Id. 139-40.) Hunter and Foreman continued to yell at each other, although Officer Orick could not distinguish what they were saying. (Id. 139-44.)

Officer Orick was simultaneously using his radio to broadcast the first shot fired and requesting backup when Hunter suddenly raised his right hand and fired a second shot. (Id. 139-44.) This second shot was fired directly at Foreman. (Id.) Before Officer Orick could react, Hunter again raised his right hand and fired another shot at Foreman. (Id.) As Hunter raised his right hand to fire a third time, Officer Orick dropped his radio microphone and fired a single fatal shot at Hunter. (Id. 144-46.)

The Dayton Police Department conducted a homicide investigation into Hunter's death. (Deposition of Daniel Keith Hall ("Hall Dep.") 10-12 May 13, 2010.) The homicide investigation was conducted by Detective Daniel Hall. (Id.) Detective Hall confirmed that the scene of the shooting was immediately under the control of the Dayton Police Department and was secured and processed as any homicide would be. (Id. 43-45.)

During their investigation of the scene, investigators were able to locate only one spent shell casing from Hunter's handgun. (Id. 81-82.) Yet, Officer Orick testified that Hunter fired at least three rounds. Detective Hall testified that simply because one casing was located does not prove more casings were not at the scene. (Id. 82.) Detective Hall also testified that he has experienced many homicide investigations where the casings and projectiles were unable to be recovered. (Id. 85.)

When confronted with some witness statements that conflict with Officer Orick's version of the events, Officer Orick states that these statements are not factual. (Id. 186-97.) However,

acceptable Rule 56 evidence regarding these witness statements has not been presented.

## RELEVANT LEGAL PROVISIONS

### Summary Judgment

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence

specifically called to its attention by the parties.

## Qualified Immunity for § 1983 Claim

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[I]t provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The doctrine of qualified immunity balances the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably. *Id.* Further, since qualified immunity is an immunity from suit, immunity questions should be resolved at the earliest possible stage of the litigation. *Id.*

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving qualified immunity claims. *Pearson*, 129 S. Ct. at 815. At the first step, a court is to decide whether the facts that a plaintiff has alleged or shown comprise the violation of a constitutional right. *Id.* at 816. At the second step the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Both steps must be satisfied to prevent qualified immunity, or, said another way, qualified immunity is provided unless the official's conduct violated a clearly established constitutional right. *Id.*(citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In *Saucier*, the Supreme Court determined that the two steps had to be addressed

sequentially. Later, in *Pearson*, the Supreme Court decided that the district and appeals courts could decide which of the two steps would be first addressed. *Id.* at 818.

### Violation of a Constitutional Right

Regarding violation of a constitutional right, the issue in this case involves the Fourth Amendment's protection against the use of force. This constitutional right is more fully discussed below.

### Whether Constitutional Right Was Clearly Established

Regarding whether the constitutional right is clearly established, the dispositive inquiry is whether it would be clear to a reasonable officer that her or his conduct was unlawful in the situation confronted. *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007)(citing *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004)). To find that a clearly established right exists, the court must find binding legal precedent setting forth the right. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991). The unlawfulness must also be apparent in the light of pre-existing law. *Anderson*, 483 U.S. at 640.

### Excessive Force

Claims that law enforcement officers have used excessive force are analyzed under the Fourth Amendment and its objective reasonableness standard. *Livermore*, 476 F.3d at 404. The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. *Whitlow v. City of Louisville*, 39 Fed. Appx. 297, 302 (6th Cir. 2002). Said another way, the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting the officer. *Vaughn v. City of Orlando*, No. 6:07-cv-1695, 2009 WL 3241801 at *6 (M.D. Fla. Sept. 29,

2009)(citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Further, determining whether the force used is reasonable requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Whitlow*, 39 Fed. Appx. at 303(citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)).

The use of deadly force, a form of excessive force, is only constitutionally permissible if the officer has probable cause to believe that the suspect poses a threat of serious physical harm to either the officer or to others. *Id.*(citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). Further, a police officer need not always call out a warning before using deadly force. *Vaughn v. City of Orlando*, No. 6:07-cv-1695, 2009 WL 3241801 at *6 (M.D. Fla. Se pt. 29, 2009)

The time frame considered is important in excessive force cases. *Livermore*, 476 F.3d at 406(citing *Dickerson v. McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996)). Other than where there is a random attack, the analysis of whether excess force was used begins with the decision of the police officer to do something, to help, to arrest, to inquire. *Id.*

Burden of Proof

When a defendant asserts qualified immunity, as is the case here, the burden of proof shifts to that defendant to show that no genuine issue of material fact exists which would defeat the claim of qualified immunity. *Wallace v. City of Shelby*, 968 F. Supp. 1204, 1209 (N.D. Ohio 1997)(citing *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995)). Once the defendant has done so, the burden shifts back to the plaintiff who must then prove that the defendant violated a clearly established right of which a reasonable person would have known. *Livermore*, 476 F.3d at 403. In an excessive force case, the plaintiff must also show that the defendant had

notice that the manner in which the force was used had been previously proscribed. *Id.* at 403-04.

## Immunity for Ohio Wrongful Death Claim

Ohio law, which is applicable here, provides for immunity to the state and its political subdivisions and sets forth specific exceptions. *Chesher v. Neyer*, 477 F.3d 784, 796 (6th Cir. 2007). Specifically and relevant to this case, Ohio Rev. Code § 2744.03 grants immunity to employees of political subdivisions acting within the scope of their employment but provides that this immunity is subject to specific exceptions. *Id.* The employee is immune from liability unless: (1) the employees acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (2) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) civil liability is expressly imposed upon the employee by a section of the Ohio Revised Code. Ohio Rev. Code § 2744.03(6).

The second exception, which is the one relevant here, specifically focuses on the employee's state of mind. *Chesher*, 477 F.3d at 797. To wit, Ohio law defines wanton and reckless conduct as:

> perversely disregarding a known risk, or acting or intentionally failing to act in contravention of a duty, knowing or having reason to know of facts which would lead a reasonable person to realize such conduct creates an unreasonable risk of harm substantially greater than the risk necessary to make the conduct negligent.

*Webb v. Edwards*, 845 N.E.2d 530, 536 (Ohio Ct. App. 2005). Wanton misconduct or recklessness is normally a jury question. *Chesher*, 477 F.3d at 802(citing *Fabrey v. McDonald Village Police Department*, 639 N.E.2d 31, 35 (Ohio 1994)).

Ohio law also defines malice. Malice is the wilful and intentional design to do injury or

the intention or desire to harm another through conduct which is unlawful or unjustified. *Cook v. City of Cincinnati*, 658 N.E.2d 814, 821 (Ohio Ct. App. 1996)(citing *Jackson v. Butler Co. Board of Commissioners*, 602 N.E.2d 363 (Ohio 1991)).

Finally, Ohio law also defines bad faith. Bad faith involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will or an actual intent to mislead or deceive another. *Id.*

## ANALYSIS

Officer Orick argues that he is entitled to summary judgment on Tranter's § 1983 claim because he is entitled to qualified immunity from that claim. Officer Orick also argues that he is entitled to summary judgment on Tranter's state law claims because he is entitled to immunity from those claims. Tranter opposes granting summary judgment on any of his claims. Each of Tranter's claims will be addressed seriatim.

### Section 1983 Claim

Tranter claims that Officer Orick violated Hunter's Fourth Amendment right to be free from unreasonable searches and seizures when Officer Orick shot and killed Hunter. Officer Orick responds that he is entitled to qualified immunity from this claim.

The Supreme Court has set forth a two-step process for resolving qualified immunity claims. In this case, the court will first address whether Tranter has alleged a violation of the Fourth Amendment with regard to Hunter's death, the first step in the process.

Tranter alleges a Fourth Amendment violation in his complaint but the Rule 56 evidence developed in discovery reveal otherwise. Officer Orick has presented Rule 56 evidence that his use of force was constitutionally permissible. The burden then shifts to Tranter to identify Rule

56 evidence showing that Officer Orick's actions were not constitutionally permissible. This he has not accomplished.

The use of deadly force, a form of excessive force, is constitutionally permissible only if, judged from the perspective of a reasonable officer on the scene, Officer Orick had to shoot Hunter because he thought Hunter posed a threat of serious physical harm to Foreman. In this case, based upon the Rule 56 evidence submitted, a reasonable officer on the scene would have believed that Hunter posed a threat of serious physical harm to Foreman.

Prior to arriving at the scene, Officer Orick had been told that he was approaching a disturbance with two black males fighting and shots fired. Upon arrival, Officer Orick observed and heard Hunter and Foreman arguing in the street. He also observed Hunter shoot a .25 caliber handgun once into the air and twice at Foreman. When Hunter appeared to be firing at Foreman for the third time, Officer Orick fatally shot Hunter.

Tranter first argues that Officer Orick should have warned Hunter before he shot at him. However, courts have held that a warning is not required in this situation.

Tranter also argues that there is an issue of material fact because only one casing from Hunter's .25 caliber handgun was found. However, Detective Hall, who has performed many homicide investigations, testified that projectiles and casings are not always recovered. Thus, this argument is not enough to create an issue of material fact.

Finally, Tranter argues that there are additional issues of material fact given that two supportable versions of the incident exist. However, Tranter has not presented Rule 56 evidence of another supportable version. In support of this argument, Tranter cites three cases: *Wilkins v. City of Oakland*, 350 F.3d 949 (9th Cir. 2003); *Jackson v. Hoylman*, 933 F.2d 401 (6th Cir.

1991) and *Rivers v. Bowers*, No. 2:06-cv-712, 2008 U.S. Dist. LEXIS 39558 (S.D. Ohio May 15, 2008). However, in each of these cases there were disputed facts. Here, there are no disputed facts.

In sum, there are no genuine issues of material fact and Officer Orick's actions were constitutionally permissible. Further, since Officer Orick's actions were constitutionally permissible, the Court need not address whether the constitutional right was "clearly established" at the time, the second step in the process. Officer Orick is, therefore, entitled to qualified immunity from Tranter's § 1983 claim. Officer Orick's Motion for Summary Judgment on Tranter's § 1983 claim is granted.

## Wrongful Death

Tranter claims that Officer Orick wrongfully caused Hunter's death pursuant to Ohio law and that Officer Orick's actions in doing so were wilful and wanton. Officer Orick responds that he is entitled to immunity from this claim pursuant to Ohio law.

Ohio law grants immunity to Officer Orick, an employee of a political subdivision of Ohio, unless Officer Orick: (1) was acting outside of the scope of his employment; (2) was acting with a malicious purpose, in bad faith or in a wanton or reckless manner; or (3) unless civil liability is expressly imposed upon Officer Orick by a section of the Ohio Revised Code. In this case, Officer Orick was not acting outside of the scope of his employment and neither Party argues otherwise. Also, the Court is not aware of a section of the Ohio Revised Code expressly imposing liability on Officer Orick in this case and no Party has argued otherwise. Therefore, the only issue here is whether Officer Orick was acting with a malicious purpose, in bad faith or in a wanton or reckless manner**.**

Tranter argues that Officer Orick's conduct in shooting Hunter was reckless and that the same factual issues in dispute under the § 1983 reasonableness analysis are in dispute here. Ohio law defines wanton and reckless conduct as it relates to the facts and circumstances here as acting or intentionally failing to act in contravention of a duty or knowing or having reason to know of facts which would lead a reasonable person to realize such conduct creates an unreasonable risk of harm substantially greater than the risk necessary to make the conduct negligent.

In this case, there is no Rule 56 evidence that Officer Orick's actions in shooting Hunter were wanton and reckless. Tranter argues that same factual issues in dispute under the § 1983 reasonableness analysis are in dispute here, but, as more fully explained above, Tranter has not presented Rule 56 evidence of any factual disputes. As set forth above, Officer Orick's actions in shooting Hunter were objectively reasonable. Officer Orick used deadly force on Hunter because Hunter was shooting at Foreman attempting to cause Foreman serious physical harm or death.

Thus, there are no genuine issues of material fact and Officer Orick is entitled to immunity on Tranter's wrongful death claim. Officer Orick's Motion for Summary Judgment on Tranter's wrongful death claim is granted.

### Survival Action

Tranter claims that Hunter sustained multiple injuries, suffered great pain of body and mind prior to his death due to the wilful and wanton acts of Officer Orick. Officer Orick responds that he is entitled to immunity from this claim pursuant to Ohio law.

The analysis of this survival claim is the same as the analysis of Tranter's wrongful death claim. Thus, the result is the same.

There are no genuine issues of material fact and Officer Orick is entitled to immunity from Tranter's survival claim. Officer Orick's Motion for Summary Judgment on Tranter's survival claim is granted.

## SUMMARY

The Dayton Police Department Homicide Investigation report, the Statement of Chanata Hunter, the Statements of Mr. and Mrs. Terry Lynch, the Statement of Jammell Hicks, the Statement of David Demmons and the Statement of Ashley Nunery are all hearsay and will not be considered for purposes of this Motion for Summary Judgment. Further, there are no genuine issues of material fact and Officer Orick is entitled to judgment as a matter of law on all of Tranter's claims.

Officer Orick is entitled to qualified immunity from Tranter's § 1983 claim for use of excessive force because his actions regarding the shooting of Hunter were constitutionally permissible. He is entitled to immunity from both of Tranter's state law claims because immunity is provided by the Ohio Revised Code and Tranter had not presented evidence satisfying any of the exceptions to this section of the Ohio Revised Code. Officer Orick's Motion for Summary Judgment (doc. #13) is GRANTED.

Since no claims remain, the Court need not consider the Parties' arguments regarding punitive damages. Finally, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

DONE and **ORDERED** in Dayton, Ohio this Eighth day of July, 2010.

**s/Thomas M. Rose**

                                                                _____  
                                                                         THOMAS M. ROSE  
                                                             UNITED STATES DISTRICT JUDGE

Copies furnished to:  
Counsel of Record